**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA**

-vs-                                                                                          Case No.  6:07-cr-211-Orl-22DAB

**LUIS M. CANDELARIO**
**THOMAS E. VANDER LUITGAREN**

_____

## ORDER

This cause comes before the Court on Defendant Candelario and Defendant Vander Luitgaren's oral motion for a judgment of acquittal under Fed. R. Crim. P. 29, made at the end of the government's case and again at the close of all the evidence.  The Court heard oral argument on these motions on June 24, 2008, and June 27, 2008, respectively, and now denies the motions.

**Analysis**

Viewing the evidence presented in the light most favorable to the United States, the Court holds that the United States has met its burden of presenting sufficient evidence that defendants conspired to commit wire fraud and honest services fraud such that acquittal is not warranted. The government has presented evidence that Defendants "intended to breach a fiduciary duty, and that [defendants] foresaw or reasonably should have foreseen that [their] employer might suffer an economic harm as a result of that breach." *United States v. deVegter*, 198 F.3d 1324, 1329 (11th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000) (citations omitted).  The defendant in *deVegter* was accused of defrauding a county by accepting payment to recommend a particular investment bank as an underwriter for the county.  *Id*. at 1326.  The Eleventh Circuit in *deVegter* stated that "[c]orrupting the process by which [a] recommendation was made poses a reasonably foreseeable

risk of economic harm . . . because the best underwriter might not be recommended." *Id.* at 1331. Similarly, in this case, Defendants allegedly corrupted the contractual process, jeopardizing their companies' future contracts and reputations and diverting over $300,000 towards commission payments, some of which may not have been paid absent the conspiracy.

Whether or not JPS and the Virgin Islands government still believe the contract was a fair deal, Defendants may still be found to have foreseen that their employer might suffer an economic harm. In *United States v. Rybicki,* 354 F.3d 124, 127 (2d Cir. 2003), *cert. denied*, 543 U.S. 809 (2004), certain attorneys were indicted for arranging payments to claims adjusters at insurance companies who had insured the attorneys' clients. The payments induced the adjusters to expedite settlement of the claims and were computed as a percentage of the total settlement amount. *Id.* The insurers had written policies prohibiting such payments. In *Rybicki*, the Second Circuit recognized that "[n]ot every breach of an employee's fiduciary duty to his employer constitutes mail or wire fraud," but upheld the wire fraud conviction. *Id.* at 135 (citations omitted). Even though the government acknowledged that it did not prove that the amount the defrauded parties ultimately paid was unreasonable, the conviction stood. *Id.* Here, whether or not the overall contract price was reasonable, Defendants can be found to have conspired to commit honest services fraud. The commission payments came from the total contract price, were not disclosed, and jeopardized the employers' future contracts and reputations.

*United States v. Pennington*, 168 F.3d 1060, 1065 (8th Cir. 1999), is also illustrative. In *Pennington*, the defendant was president of a grocery store chain who accepted secret kickbacks from a consultant and a food broker based on contracts the broker and consultant made with the grocery store chain. *Id.* at 1063. There, the Eighth Circuit held that "a reasonable jury could find

that the scheme was intended to and did defraud [the grocery store chain] by depriving it of [defendant's] honest services in obtaining the most advantageous supply, brokerage, and consulting contracts that could be negotiated." *Id*. at 1065.[1]  The similar facts here are sufficient to merit consideration by a jury.

Defendants' reliance on *United States v. Brown,* 459 F.3d 509, 522 (5th Cir. 2006), *cert. denied*, 127 S. Ct. 2249 (2007), is misplaced.  In *Brown*, the extra payment alleged to be improper was a bonus purposefully paid by Enron (the employer) directly to its employees. *Id*. at 513.  The Fifth Circuit there stated, "[g]iven that the only personal benefit or incentive originated with Enron itself- not from a third party as in the case of bribery or kickbacks . . . Enron's legitimate interests were not so clearly distinguishable from the corporate goals communicated to the defendants." *Id.* at 522.  In this case, however, Defendant Vander Luitgaren received payments from Defendant Candelario, not his employer, and Defendant Candelario received payments from AKSV, not his employer, JPS.  Unlike the defendants in *Brown*, Defendants here had interests in the alleged payments that were personal and not aligned with the interests of their employers.

Similarly, the journal article that Defendant Vander Luitgaren provided to the Court is inapplicable.  That article, entitled "Another Limitation on Honest Services Fraud," discussed cases like *Brown*, where the "aligned interests of the employee and employer" were determinative. *See* Geraldine Szott Moohr, Another Limitation on Honest Services Fraud?, The Champion, April 2008, at 18.

---

[1] It is true that in *Pennington*, 168 F.3d at 1064, the government presented evidence that the grocery chain paid too much for the relevant contracts, but as discussed *infra* at p. 2, a reasonable price alone is not a basis for acquittal.

-3-

**Conclusion**

For the foregoing reasons, it is ORDERED that Defendant Candelario and Defendant Vander Luitgaren's Motions for a Judgment of Acquittal pursuant to Fed. R. Crim. P. 29 are DENIED.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 30, 2008.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Magistrate Judge